On Application eor Rehearing.
Fenner, J.
I have given very close attention to the able brief for-rehearing, and to the argument cited in support thereof.
.These authorities certainly place a judicial construction on Art. 3061, Rev. O. O., to the effect that the partial release of any of the-securities of the principal held by the creditor only releases the debtor pro tanto. Barrow vs. Shields, 13 An. 63; 11 An. 179; 29 An. 844; 30 An. 159.
They rest upon the principle that the creditor has the right to take-payment from the debtor without discharging the surety from liabil - ity for any balance that may remain due; and so, if he has released,, or has applied to his debt, securities of fixed and certain value, at *269 that value the sureties can not, on that account, claim discharge from liability for the amount remaining due after crediting the debt for such values.
• But I can not convince myself that the principle or the authorities cover such a case as the one before us, in which the creditor, after the defalcation of its employee, takes from him all the assets of every kind which he possesses, consisting of a mass of securities of contingent value, such as policies of life insurance on the lives of the debtor and of third persons, undivided interests in real estate, litigated ■ claims against debtors, unliquidated demands of various kinds, and, without notice to the sureties, proceeds, at its leisure, to reduce them all to cash by settlements, compromises and otherwise, and after crediting such cash on the excess of their claim above the amount of the sureties’ obligation, proceeds against the sureties for the balance.
The securities transferred had an apparent or potential value ■exceeding the total amount of the debtor’s liability. The policies of life insurance alone approximated, in amount, the total liability. Had Randall died the day after the transfer the policies on his life alone, with the amounts actually collected from other sources, would have wiped out the whole debt.
What right had the creditor, without notice to the sureties, to surrender these policies to the insuring companies at a trifling cash valuation? Non constat that the sureties might not have preferred themselves to' take these policies at the cash valuation to keep them alive, and thus secure themselves against eventual loss.
Might not the sureties have preferred to buy in the real estate which was sold in partitiqn, which sale may have been at a sacrifice, ■or which they might have desired to hold for a rise in value?
Might they not have chosen to resist the compromises and settlements of the liquidated and unliquidated claims, which the creditor chose to make, or to have paid him the amounts which he was willing to take for them, and to prosecute the suits?
These rights certainly belonged to the sureties under Art. 3061 of the Code, and the creditors had no right to deprive the sureties of them.
They had the right and the interest to see that the assets surrendered by their principal were so administered as to realize the utmost possible value to be appropriated in reducing the debt for which they were responsible, and to have a voice in such administration.
*270 The creditor had no right to make compromises and settlements and surrenders according to Ms own whim without consulting the sureties, and without giving them even the chance of taking to themselves the benefit of such settlements, and, after denuding the principal of everything he has in the world, to turn his sureties over to a barren recourse against him.
Such unauthorized dealings with the securities turned over by the debtor, are inconsistent with the intention or with the right to pursue the sureties. He has deprived the latter of valuable rights of subrogation which inhered in their contract, and the penalty is the loss of his right to proceed against them.
It is said, however, that in this case the denial by the sureties of' their liability on this bond in any event deprives them of the right to notice and of the right' to complain of want thereof. They never made such denial until their answer in this suit, which was -not filed until after all the dealings above complained of had been completed. They were left in ignorance of any claim against them until after their principal had been shorn of every vestige of property to which they might have looked for protection under the unauthorized dealings of the creditor, and I think they were justified in settingup every •possible defence to such a suit.
I therefore concur in the refusal of the rehearing.
Pocho, J., concurs in this opinion.